UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DANIEL R. HARDWICK,**

    **Plaintiff,**

  v.                                 **Civil Action 2:19-cv-5142**
                                        **Chief Judge Algenon L. Marbley**
**COMMISSIONER OF SOCIAL**         **Magistrate Judge Chelsey M. Vascura**
**SECURITY,**

    **Defendant.**

### REPORT AND RECOMMENDATION

Plaintiff, Daniel R. Hardwick ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Period of Disability and Disability Insurance Benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 12), Plaintiff's Reply (ECF No. 13), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I. BACKGROUND

Plaintiff filed his application for Title II Period of Disability and Disability Insurance Benefits on January 20, 2016, alleging that he had been disabled since July 9, 2015. (R. 179.) On August 3, 2018, following administrative denials of Plaintiff's application initially and on reconsideration, a hearing was held before Administrative Law Judge Jeffrey Hartranft (the "ALJ"). (*Id.* at 40–65.) Plaintiff, represented by counsel, appeared and testified. Vocational

expert Eric Pruitt (the "VE") also appeared and testified at the hearing. On December 6, 2018, the ALJ issued a decision denying benefits. (*Id.* at 10–33.) On February 14, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1–3.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In his Statement of Errors (ECF No. 11), Plaintiff states that his sole contention of error is that the ALJ failed to properly evaluate the mental health opinion evidence of record. However, the substance of his Statement of Errors is that the ALJ failed to sufficiently explain his evaluation of various medical source opinions in arriving at Plaintiff's RFC.

## II.     RELEVANT RECORD EVIDENCE

The undersigned will limit discussion of the evidence to those medical source opinions bearing on Plaintiff's contention of error. As no treating source submitted an opinion as to Plaintiff's mental functional capacity, the ALJ relied only on the opinions of consulting sources.

**A.     Floyd Sours, M.A., State Agency Psychological Consulting Examiner**

Consulting examiner Floyd Sours, M.A., examined Plaintiff on March 16, 2016. (R. 465–69.) Plaintiff reported to Mr. Sours that he became depressed and anxious after he had a seizure in 2015 and was subsequently diagnosed with a brain tumor. (*Id.* at 465.) However, Plaintiff reported no treatment for anxiety or depression. (*Id.*) Plaintiff further reported that "he was depressed after surgery but 'it has gone away pretty much recently'"; that "he sleeps poorly because of anxiety, gets withdrawn when depressed, [and] has trouble concentrating all the time." (*Id.* at 467.) Plaintiff also reported "a little anxiety in the last two weeks" and explained that "he is anxious at night because of racing thoughts. He has no panic attacks. He described anxiety 'that really kicks in at Walmart.'" (*Id.*) Plaintiff reported that "[h]e fears crowds but it is not disabling." (*Id.*) Mr. Sours diagnosed Plaintiff with adjustment disorder with mixed anxiety

and depressed mood. (*Id.* at 468.) Mr. Sours further opined that Plaintiff would have the ability "to understand, remember and carry out instructions in a work setting at present"; "to attend and concentrate as he persists and paces himself in the pursuit of simple, repetitive and multistep tasks in a work setting"; "to maintain appropriate behavior in a work setting as he interacts with supervisor and co-workers"; and "to maintain appropriate behavior in a work setting under work pressure." (*Id.* at 468–69.)

**B.     Paul Tangeman, Ph.D., State Agency Psychological Reviewing Consultant**

State agency psychological consultant Paul Tangeman, Ph.D., reviewed Plaintiff's claim file at the initial level. (R. 78–80.) On March 21, 2016, Dr. Tangeman opined that Plaintiff suffered from a non-severe affective disorder, and as to the paragraph B criteria, he had no repeated episodes of decompensation, and only mild limitation in the areas of restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration.[1] (*Id.* at 78.) Dr. Tangeman also gave Mr. Sours's opinion "great weight" because "it is consistent with the medical evidence in the file." (*Id.* at 80.) Dr. Tangeman thus concluded that "[Plaintiff's] psych conditions are not expected to cause more than mild limitations on his ability to work." (*Id.*)

**C.     Judith Schwartzman, Psy.D., State Agency Psychological Reviewing Consultant**

State agency psychological consultant Judith Schwartzman, Psy.D., reviewed Plaintiff's claim file at the reconsideration level. (R. 92–98.) On September 27, 2016, Dr. Schwartzman determined that Plaintiff suffered from a severe affective disorder and agreed with Dr. Tangeman's evaluation of the paragraph B criteria, except that Dr. Schwartzman found that

---

[1] These four aspects of mental functioning are referred to as the "paragraph B criteria," as they appear in paragraph B of many Listings of Impairments involving mental impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A(2)(b).

Plaintiff was moderately impaired as to maintaining concentration, persistence, or pace. (*Id.* at 92.) Dr. Schwartzman also gave only partial weight to Mr. Sours's opinion, because "the evidence shows [Plaintiff] will have trouble with stress tolerance and maintaining concentration over extended periods of time." (*Id.* at 94.) Dr. Schwartzman opined that Plaintiff can understand, remember, and perform 1–4 step tasks, and that "[w]hen symptoms increase, he will need flexibility in work schedule, taking break[s], and pacing." (*Id.* at 97.) She further opined that Plaintiff "will need advance notice of major changes and a gradual implementation." (*Id.* at 98.)

### III. THE ALJ'S DECISION

On December 6, 2018, the ALJ issued a decision finding again that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 10–33.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of July 9, 2015. (*Id.* at 12.) At step two,

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

4

the ALJ found that Plaintiff has the severe impairments of astrocytoma, seizure disorder, adjustment disorder, and anxiety. (*Id.*) He further found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 13.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except occasionally climb ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasionally balance; avoid workplace hazards such as unprotected heights and machinery; no commercial driving; simple routine and repetitive tasks, involving only simple work-related decisions and with few, if any workplace changes; no strict production quotas or fast-paced work such as on an assembly line; occasional interaction with the general public, coworkers, and supervisors with no customer service responsibilities.

(*Id.* at 16–17.) In arriving at the mental limitations of the RFC, the ALJ discussed Mr. Sours's opinion as follows:

> I have considered the opinion of consultative examiner Dr. Floyd Sours and I give this opinion partial weight. Dr. Sours found the claimant could understand, remember and carry out instructions in a work setting. Dr. Sours found the claimant would have the ability to attend and concentrate as he persists and paces himself in the pursuit of simple, repetitive and multi-step tasks in a work setting. Dr. Sours found the claimant had the ability to maintain appropriate behavior in a work setting as he interacted with supervisors and coworkers. Dr. Sours found the claimant could maintain appropriate behavior in a work setting under work pressure. (Exhibit 8F, pages 4–5). This opinion was consistent with Dr. Sours' examination of the claimant. However, more recent records reflect some reported issues dealing with anxiety in the public support greater degrees of limitation in that area. Thus, this opinion is given partial weight.

(R. 28–29). The ALJ also discussed the opinions of Dr. Tangeman and Dr. Schwartzman:

> I have considered the opinion of state agency psychological consultant Dr. Paul Tangeman and I give his opinion little weight. He found the claimant had no severe mental impairments with only mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration. (Exhibit 1A). Although the claimant did have minimal mental health treatment, he did have significant consistently reported symptoms to support a finding of a severe mental impairment. Thus, this opinion is given little weight.

5

> I have considered the opinion of state agency psychological consultant Dr. Judith Schwartzman and I give her opinion partial weight. She found the claimant had mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration. She found the claimant's [*sic*] moderately limited in understanding, remembering, and carrying out detailed instructions, but could understand and remember one to four step tasks. She found the claimant's [*sic*] moderately limited in maintaining attention and concentration for extended periods, performing activities within a schedule, maintain regular attendance, being punctual within customary tolerances, completing a normal workday and workweek without interruptions from psychological based symptoms, and performing at a consistent pace without an unreasonable number and length of breaks. She found the claimant would occasionally need flexibility in work schedule, taking breaks, and pacing when symptoms increased. She found the claimant was moderately limited in responding appropriately to changes in the work setting, as the claimant would need advance notice of major changes and a gradual implementation. (Exhibit 3A). While some limitations were warranted due to his memory issues, adjustment disorder, anxiety, and reported difficulty following conversations, . . . there is no indication that the claimant could not respond appropriately to changes in the work setting or needed flexibility in the work schedule due to those symptoms. Thus, this opinion is given partial weight.

(R. 28.)

At step five of the sequential process, the ALJ, relying on the VE's testimony, found that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. (*Id.* at 32.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

Plaintiff does not argue that the ALJ's RFC is not supported by the record or that he erred in weighing the various opinion evidence. Rather, Plaintiff's sole contention of error is that the ALJ failed to provide a sufficient explanation of how he evaluated the various consulting opinions to arrive at Plaintiff's mental RFC. Plaintiff is clear that he "is not arguing that the ALJ should have given more weight" to any particular opinion, "or that he was under some obligation to adopt certain opinions." (Statement of Errors 11, ECF No. 11.) Instead, Plaintiff asserts that the ALJ's analysis (1) is "internally inconsistent" and (2) failed to adequately address some of Dr. Schwartzman's opined limitations. (*Id.* at 11–12.) Both of these arguments lack merit.

7

A.     **The ALJ must sufficiently explain the basis for the RFC determination.**

The ALJ is charged with the final responsibility for determining a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as your residual functional capacity, . . . the final responsibility for deciding these issues is reserved to the Commissioner."). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). Social Security Ruling 96-8p instructs that the ALJ's residual functional capacity assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. *See also* 42 U.S.C. § 423(d)(5)(B). An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

B.     **The ALJ's RFC analysis is not internally inconsistent.**

Plaintiff argues that the ALJ's RFC analysis is internally inconsistent because he afforded the same amount of weight ("partial weight") to both Mr. Sours's and Dr. Schwartzman's opinions, even though "these opinions stand at opposite ends of the evaluation spectrum."

8

(Statement of Errors 8, ECF No. 11.) Plaintiff notes that Mr. Sours found that Plaintiff had essentially no mental impairments or limitations, whereas Dr. Schwartzman found Plaintiff had a severe affective disorder and was limited in several areas. Plaintiff argues that Dr. Schwartzman's opinion was much closer to the RFC that the ALJ ultimately adopted than was Mr. Sours's opinion, and therefore it is inconsistent that the ALJ afforded both opinions the same "partial" weight.

Plaintiff's argument lacks merit. There is simply nothing inconsistent about partially crediting two opinions that reach different results. Here, the ALJ crafted an RFC that fell somewhere in between the two opinions—imposing more limitations than opined by Mr. Sours, but imposing fewer limitations than opined by Dr. Schwartzman. In other words, he partially credited both opinions, just as his analysis explained. The undersigned finds no error in this regard.

Plaintiff also argues that the ALJ was internally inconsistent by agreeing with Dr. Schwartzman that Plaintiff is moderately limited in the area of maintaining concentration, persistence, or pace as part of the paragraph B criteria analysis, but disagreeing with the specific limitations Dr. Schwartzman opined in that area as to the need for flexibility in his work schedule and in taking breaks and pacing. (Statement of Errors 9–10, ECF No. 11.) But again, there is nothing inconsistent about this result. First, the paragraph B criteria analysis is separate from the RFC analysis, as explained by the ALJ in his decision. (R. 16) ("The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.") Thus, agreement with a

9

medical source's opinion as to the paragraph B criteria does not require agreement with the medical source's opinion as to functional limitations.  Further, the ALJ *did* include an RFC limitation related to pacing, precluding Plaintiff from "strict production quotas or fast-paced work such as on an assembly line." (R. 17.)  Thus, the ALJ's paragraph B criteria analysis was consistent with his mental RFC analysis, even though he did not adopt Dr. Schwartzman's specific opined limitations. *See also Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.").

**C.     The ALJ sufficiently addressed Dr. Schwartzman's opined limitations.**

In discussing Dr. Schwartzman's opinion, the ALJ specifically declined to include Dr. Schwartzman's opined limitations regarding difficulties "respond[ing] appropriately to changes in the work setting or need[ing] flexibility in the work schedule" because the record contained "no indication" that such limitations were necessary. (R. 28.)  Plaintiff does not challenge this finding.  However, the ALJ did not expressly address Dr. Schwartzman's opined limitations regarding the need for flexibility in taking breaks and in pacing.  Plaintiff contends that the ALJ's failure to specifically address breaks and pacing in discussing Dr. Schwartzman's opinion makes it "impossible to tell" whether the ALJ found those limitations inconsistent with the record or merely overlooked the limitations entirely. (Statement of Errors 10, ECF No. 11.)  According to Plaintiff, "[t]he ALJ's complete silence on this matter casts doubt as to the credibility of the ALJ's decision as a whole." (*Id.*)  As to the need for taking breaks, this argument lacks merit because taking "breaks" is logically encompassed within Plaintiff's "work schedule," which the ALJ specifically addressed and found no limitation necessary (and which finding Plaintiff does not contest).

10

Further, although the ALJ did not adopt verbatim Dr. Schwartzman's opined limitation that Plaintiff would need flexibility in his pacing when his symptoms increased, the ALJ sufficiently accounted for this opined limitation by precluding Plaintiff from "strict production quotas or fast-paced work such as on an assembly line." (R. 17.) Plaintiff argues, however, that the ALJ's RFC limitation does not make it clear whether the ALJ intended to adopt Dr. Schwartzman's opined limitation that Plaintiff would need flexibility in pacing when his symptoms increased. Plaintiff contends that if the two formulations were congruent, "Dr. Schwartzman, being an expert in disability evaluation and familiar with program knowledge, would have simply said as much. Instead Dr. Schwartzman opined one limitation and the ALJ included another in the mental residual functional capacity. At the very least, this inconsistency needed to be addressed by the ALJ. *See* SSR 96-8p."

This argument also lacks merit. Both Dr. Schwartzman's opined limitation and the ALJ's RFC limitation have the same effect: preventing Plaintiff from working in contexts where he is unable to keep pace. Any failure to specifically address Dr. Schwartzman's opined limitation as to flexibility in pacing is therefore harmless because the ALJ included a pacing limitation in the RFC that accommodated Dr. Schwartzman's opined limitation. *Cf. Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (stating that violations of the procedural rules within the treating physician context constitutes harmless error if the ALJ's decision "makes findings consistent with the opinion"). The undersigned concludes that the RFC sufficiently accounts for Dr. Schwartzman's opinion relating to pacing and that the ALJ was not required to offer an explanation for why he did not parrot Dr. Schwartzman's opined limitation verbatim. *See*, *e.g.*, *Slaughter v. Comm'r of Soc. Sec.*, No. 2:19-CV-4867, 2020 WL 2988468, at *8 (S.D. Ohio June 4, 2020); *Reeves*, 618 F. App'x at 275.

Moreover, Plaintiff's reference to S.S.R. 96-8p is wholly inapposite. This Social Security Ruling requires that "[t]he adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." S.S.R. 96-8p, 1996 WL 374184, at *7. By its express terms, this portion of S.S.R. 96-8p applies to inconsistencies in the *evidence*; it does not, as Plaintiff suggests, limit the ALJ's ability to articulate an RFC that deviates from the wording used by an opining medical source. The fact that the ALJ used different language to arrive at the same result does not create an "inconsistency" for the purpose of S.S.R. 96-8p.

In sum, the undersigned finds that the ALJ sufficiently explained the basis for Plaintiff's mental RFC and **RECOMMENDS** that Plaintiff's sole contention of error be **OVERRULED**.

## VI. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE